[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter came on before the Court for a jury-waived trial in May and June of 2005.[1] In this action, Sachem Passage Association, Inc. ("Sachem") prays for an order evicting defendant, Francis G. Keough, III from its property and seeks damages from the defendant. Mr. Keough counterclaimed for a declaratory judgment establishing that he owns an easement over Sachem's property.
 FINDINGS OF FACT
In November, 1999 Mr. Keough purchased a lot of land located off of Post Road in Charlestown, Rhode Island, fronting on Foster Cove. The deed indicates that it was transferred for consideration and with warranty covenants, though no tax stamps are affixed to the deed.[2] (Exhibit 1) Prior to the 1999 conveyance to Mr. Keough, the property had been conveyed among various friends from Springfield, Massachusetts. Conveyances were by warranty deeds and for consideration.[3]
Mr. Keough's parcel had no frontage on any public road. In 1986 the Keough lot was created by a subdivision of lots owned by Mr. and Mrs. Joseph Iellamo. Prior to this 1986 conveyance of assessors lots 95-1, lots 95-1, 95-2, and 95-3 as shown on exhibit 1 were owned as one lot by the same owner. The four acre parcel stretched from Post Road to Foster Cove. Mr. Keough owns only lots 95-2 and 95-3 which are shown on Exhibit 1.
Sachem owns a 3.71 acre parcel to the west of Mr. Keough's lot. Sachem's property stretches from Post Road to Foster Cove and includes a rustic driveway from the street to a clearing near the water. Sachem uses the property as common property for a residential development on the north side of Post Road. While each of the owners of the development has a right to use the driveway, it is rarely used. Some owners testified that they use the driveway once a year, while others drove down once over 25 years. Each of the Sachem owners has a key to a chain gate at the Post Road entrance, though this chain has been unlocked and down frequently in the recent past. Sachem purchased its lot from Randall Associates for consideration in September of 2000. (Exhibit 10)
Though Mr. Keough owns no frontage on a public road, he constructed a dwelling on his lot during 1998 to 1999. The house measures approximately 770 square feet with two bedrooms and has a view of Foster Cove. Few records for the construction of the home were produced into evidence, apparently because Mr. Keough kept no records.[4] Mr. Keough claims the town's building inspector approved the construction based on Mr. Keough's ability to use the driveway as frontage, though no records were provided.
Mr. Keough confirmed that there was no driveway to his lot over assessor's lot 95-1 (a lot on Post Road which was originally part of the same parcel prior to the sub-division). While there was lay testimony that this lot may be wet in some areas, no engineer testified on behalf of Mr. Keough. There is no evidence before the Court to show 95-1 cannot be used for a new driveway for lot 95-2, or construction of a driveway over this lot is unfeasible.
For several generations, some members of the Narragansett Indian Tribe[5] have occasionally used the driveway to access the water. At the water, they oyster, crab and fish. Three Native Americans (Thawn Harris, Norman "Thunderbolt" Brown and Pascoag Stanton) testified as did Gregory Soder, an environmental manager for the tribe. They claimed the Narragansett Indians have a long-standing right to access the water via the driveway.
Far less frequently, others use the driveway to access the shore. Sometimes, they parked vehicles near Route 1 and on occasion the gate was open, allowing them to drive near the shore, hidden from the road. This was never quantified but clearly was sporatic and infrequent. As the use was so rare, it was neither open nor notorious.
After Mr. Keough purchased the property, he used the driveway to access his lot for camping. Still, the use was sporadic, infrequent and seasonal. It was not until construction of the home began that any use of the driveway became open or notorious.
For many years, the owners of the lot containing the driveway attempted to oust trespassers. At least since 1976, the driveway was chained off. The owners of the lot containing the driveway maintained a gate at Route One by stretching a chain across the road. As the subdivision for Sachem was developed, each of the new owners would receive a key for this gate. The procedure continued in the 1970s, 1980s and 1990s, even though the driveway was extremely overgrown and difficult to pass through. Members of Sachem would tell those discovered on the lot to leave. From about 1985 until about 1997 the vegetation on the driveway was so overgrown, it was difficult for any vehicle to travel it. The chain appears to have been removed or unlocked once construction began on Mr. Keough's lot in late 1997 or 1998.
When Mr. Keough purchased his lot Mr. Iellamo told him there were problems with getting a building permit for the lot. Mr. Keough attempted to obtain permission from the Randall family to use the driveway. While Mr. Randall permitted his seasonal, temporary, occasional access for camping, negotiations for permanent use of the driveway fell through.
When the individual sewerage disposal system (ISDS) was built for Mr. Keough's lot, it was constructed, at least in part, on Sachem's property but without the permission of Sachem, or its predecessor in title. Through the testimony of Wesley Grant, III, the only surveyor who testified at trial, Sachem established that some of the septic system pipes are located on Sachem's property underground. Curiously, while Mr. Keough was able to produce copies of the ISDS permits, Mr. Grant testified that these permits were no longer in the file at the Rhode Island Department of Environmental Management (which issues the permits). Even more odd, Mr. Keough produced several ISDS permits, but not the accompanying map showing where the ISDS system would be located. There is no indication in any of the documents produced by Mr. Keough that he had consent or authority to construct the sewerage disposal system on any property other than his own.
The court had significant concerns about Mr. Keough's credibility. He produced no documents of his property acquisition or building. He worked for a housing authority and as a realtor, so recognized the importance of these documents. He indicated that he was working with the Iellamos and Romanos (to tack on time) but later indicates how they were adverse to one another. He was told by Mr. Iellamo that he would have difficulty obtaining a permit. He first claimed Randall gave him permission to access at the time he received the permit, but later lost memory on the subject. Mr. Grant indicated the documents were missing from the D.E.M. file, but Mr. Keough had copies from the file. He admitted using Mr. Romano as a straw to hide the acquisition from the Iellamos. Through his position in Springfield he obtained labor and purchased materials at discount, and he has now lost his job. He does not recall whether he surveyed the lot or had the title examined. He acknowledged that Mr. Iellamo discussed the driveway, but Mr. Keough was unsure what was said.[6]
 ANALYSIS
Before considering Sachem's complaint which seeks to evict Mr. Keough from his property it is logical to analyze Mr. Keough's entitlement to use the driveway, if any. Mr. Keough's answer and counterclaims assert he is entitled to use the driveway as an express easement, a public easement, an easement by prescription and an easement by necessity.
Express Easement.
At trial, Mr. Keough's counsel conceded that Mr. Keough did not have an express easement. No evidence of a written conveyance to Mr. Keough for the driveway or use of the driveway was produced. Mr. Keough does not have an express easement for use of the driveway.
Prescriptive Easement
Mr. Keough claims that he is entitled to use the driveway as there is both a public easement by prescription, and a private easement by prescription. Counterclaim Counts One and Three, Defendant's Posttrial Memorandum, pp. 2-9.
Prescriptive easement claims are rooted in the adverse possession statute:
 Conclusive title by peaceful possession under claim of title — Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action. R.I.G.L. § 34-7-1.
Rhode Island courts have required that "[o]ne who claims an easement by prescription bears the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years". Stone v. Green Hill Civic Association, Inc.,786 A.2d 387, 389 (R.I. 2001). Allaire v. Fease,824 A.2d 454, 457 (R.I. 2003).
While "each element must be established by clear and convincing evidence," Reitsma v. Pascoag Reservoir Dam, LLC, 774 A.2d 826, 831 (R.I. 2001), the court noted "[n]o particular act to establish an intention to claim ownership is required. It is sufficient if one goes upon the land openly and uses it adversely to the true owner, the owner being chargeable with knowledge of what is done openly on his land.'" Id. at 832 (quotingGreenwood v. Rahill, 122 R.I. 759, 763, 412 A.2d 228, 230
(1980)).
Mr. Keough failed to establish that his use, or those who he claimed title through, was open or notorious. "[T]he notorious and openness elements are established by showing that "the claimant goes upon the land openly and uses it adversely to the true owner. The owner then becomes chargeable with knowledge of what is done openly on the land." Carnevale v. Dupee, 853 A.2d 1197, 1201
(R.I. 2004). In Carnevale, the adverse claimant had mowed grass, maintained vegetation and installed fencing. These uses would be obvious to the title owners had they viewed the property. The uses claimed by Mr. Keough (and apparently, the other persons through whom he claims title) were far less obvious. The actions of the claimant here were secretive and not "open, visible acts or declarations, accompanied by use of the property in an objectively observable manner that is inconsistent with the rights of the record owner. Tavares v. Beck,814 A.2d 346, 351 (R.I. 2003).
The court acknowledges that Mr. Keough's use became sufficiently open, obvious and notorious only when he commenced construction of his home. He did so in 1998 and by 2003 this action was in active litigation. At best, this establishes only five years of use.[7] Had Mr. Keough offered the testimony of prior owners of his parcel, he may have been able to overcome this obstacle, but he failed to do so. Instead, Mr. Keough used the testimony of the Narragansett Indians to claim that their interests were the same as his. He attempts to `tack on' their time at the property. Obviously, the interests of the Narragansett Indians[8] and their associates (while shellfishing and hunting through an alleged Native American right) is far different than Mr. Keough's.
The occasional, sporadic use of the driveway to access the water, by a variety of people, is a strikingly similar set of facts to that addressed by our high court in Daniels v. Blake, 81 R.I. 103, 99 A.2d 7 (1953). The court noted:
 In our opinion the admitted friendly relations between respondent and complainants while the latter were openly using the strip to pass to and from the shore and before they asserted the existence of a public easement tends to establish their use originally as merely permissive. We also think that the occasional passing of others to and from the shore was use of the same kind and not such as was calculated to put the title owner on notice that such passing was an adverse use under a claim of right. `Nothing is more common in Rhode Island than for people to cross land lying along the bay to get to and from the shore, and it would hardly be possible for any occupant of such land to prove title by adverse possession, if such crossings would suffice to interrupt it.' Town of New Shoreham v. Ball, 14 R.I. 566, 571. We think that observation is also pertinent in the circumstances of the instant cause where such passings are being relied on to establish a public easement of way from a public highway to the shore.
 It may well be, as the evidence seems to indicate, that such passings over the disputed strip have occurred for as long as the prescriptive period. But unless the evidence also shows that they were adverse in the beginning they cannot avail these complainants in establishing a public easement by prescription. A use originally permissive cannot be converted into an adverse use by a later use and claim of that kind. The law presumes that a use originally permissive continues in the absence of conduct clearly indicating a change. Tefft v. Reynolds, 43 R.I. 538, 113 A. 787. And such permissive use cannot ripen into an easement by prescription no matter how long it is continued. Earle v. Briggs, 49 R.I. 6, 139 A. 499. Since we deem the evidence of such adverse use here to be lacking in probative force we are of the opinion that the trial justice erred in finding that it proved the existence of a public easement. Daniels v. Blake, 99 A.2d 7, 11, 81 R.I. 103 (R.I. 1953).
It is critical to note the actions of the owner of record during the ten years. There is no dispute that a gate was regularly maintained at the Post Road entrance to the driveway. A lock was on this gate, and a key to the lock was given to each owner of Sachem property. While the lock was occasionally broken or left off, Sachem demonstrated it's intent to exclude others. Several of Mr. Keough's witnesses were told they should not be on the property.[9] Prior to the time that Sachem owned the property, the property was owned by Randall Associates. Though Mr. Keough claimed that Mr. Randall allowed Mr. Keough's predecessor in title to use the driveway[10] (which would infer a permissive, not hostile use), Mr. Randall's testimony was never offered. Hence, Mr. Keough has failed to meet the clear and convincing threshold in showing that the use was open, notorious or hostile.[11]
Mr. Keough failed to establish a prescriptive easement for the driveway.
Public Easement by Prescription
While Mr. Keough failed to establish any prescriptive rights, his attempt to establish a public easement is woefully inadequate. A landmark case for prescriptive easements in Rhode Island is the recent Reitsma case.
In Reitsma, a lake was surrounded by private homes, businesses and two camps. The state built and maintained a boat ramp and the lake was used by many for recreation. Though a private owner paid taxes on the lake and controlled the water level, lakefront properties owners regularly used the lake for swimming, boating and fishing, while members of the general public accessed the lake through the boat ramp. Reitsma, p. 830. The Supreme Court, in a 3-2 decision found a public prescriptive easement. In the case at bar, ten or so diverse persons used the driveway sporadically as a path to the water. Their use was infrequent, usually seasonal, and neither open nor adverse to the interests of the owners of the legal title. Moreover, at bar, Sachem ejected those who it saw on the property, and maintained a locked gate at the entrance.[12]
Mr. Keough uses the theory of a public easement to establish a private right. He does not desire to use the driveway to hunt, fish, boat or swim, but to access his private home. He built the private home without any express permission from the owner of the driveway, and at his own peril. Using the theory of public easements to claim a private right is a stretch not accepted in the Rhode Island Supreme Court's limited adoption of public easements.[13]
Here, members of the Narragansett Indian Tribe use the driveway as tribal members, or as friends of the Narragansetts. Unlike Reitsma, the use of the property here is neither open nor notorious. The use was sporadic and used by such a diverse group of people (some working for others, some claiming they had Mr. Keough's permission, some claiming a Native American entitlement and others just accompanying them), that the court is unable to conclude that use by any person, or the public, was continuous.[14]
Sachem argues that Mr. Keough has no standing to press for a prescriptive easement. Mr. Keough is a private resident, not a governmental official. In Reitsma, the claim for public easement was brought by the Director of the Rhode Island Department of Environmental Management, represented by Attorney General. This court need not reach the issue of whether a private individual may claim a public easement, but questions his ability to do so when he is truly seeking an individualized, private use.
Private easement by prescription
Mr. Keough contends that the use of the driveway from 1982 through his ownership in 1999 established a private easement by prescription. (Plaintiff's Postrial Memorandum, page 6). As indicated above, Mr. Keough failed to meet all the elements necessary to establish a prescriptive right. In seeking a private (as opposed to public) easement, he faces additional hurdles.
First, he must establish the necessary ten years of adverse use. Mr. Keough purchased the property in 1999 so seeks to `tack on' additional time of prior owners. He begins by saying that during some of this period he had an option to purchase. The option was in writing, but Mr. Keough cannot produce it. He refers to using Mr. Romano, an owner after 1997, as "a straw" as he and the Iellamos were in litigation "just over money he owed me". After this comment, Mr. Keough's testimony became so contorted,[15] as he refrained from answering questions about the litigation and why the assets were being hidden, that this court questions his credibility. The court concludes that Mr. Keough was not acting through Mr. Romano or any other predecessor in title.
All of the other witnesses who testified concerning use during this period were using the property infrequently for shellfishing, hunting or recreation. No building was on any of the subdivided lots. Nevertheless, Mr. Keough showed no adverse use in favor of the owners of Mr. Keough's lot prior to his ownership.
Another significant gap was the issue of open, hostile, notorious use, necessary findings for a prescriptive easement. Stone v. Green Hill CivicAssociation, Inc., 786 A.2d 387, 389 (R.I. 2001).
At one point in his direct testimony, Mr. Keough indicated that he used the driveway because he thought he had permission of Randall Associates allowed him to access his property through the driveway. While this is important to justify his explanation of how he received a building permit, Mr. Keough's explanation establishes that his use was permissive, not hostile, at least through 1998.
However, as the use was permissive, it was not sufficiently hostile to justify an easement by prescription. "Mere permissive use of a way, no matter how long a time it may have been enjoyed, will never ripen into an easement by prescription." Earle v.Briggs, 49 R.I. 6, 139 A. 499, 500 (R.I. 1927). Even if the use was permissive, the owner can terminate this possession at any time. A license is revocable, even if the licensee relies on the license to his detriment.Henry v. Dalton, 151 A.2d 362, 366 (R.I., 1959).
Mr. Keough failed to establish openness, hostility, or notoriety in the use of the property for ten years. No easement by prescription was established.
Easement by necessity.
Mr. Keough, in his post-trial memorandum at page 12, correctly notes the standard for determination of an easement by necessity. The criteria was recently described by our Supreme Court:
 Whether an easement exists by necessity is a question of fact. This Court has held, "a trial justice sitting as a fact-finder is charged with the duty to draw inferences from established facts and that his or her `conclusion will be accepted by this [C]ourt if the inference he [or she] drew was reasonable even though other equally reasonable inferences might have been drawn.'" Reitsma v. Pascoag Reservoir Dam, LLC, 774 A.2d 826, 845 (R.I. 2001) (quoting Jerry Brown Farm Association, Inc. v. Kenyon, 119 R.I. 43, 51, 375 A.2d 964, 968 (1977)).
 This Court has ruled that "the test of necessity is whether the easement is reasonably necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made." Wiesel v. Smira, 49 R.I. 246, 250, 142 A. 148, 150 (1928). Moreover, this Court should consider whether "a substitute could be procured without unreasonable trouble or expense." Id.
 Nunes v. Meadowbrook Development Co., Inc., 824 A.2d 421, 425. (R.I. 2003)
The Nunes court chided the trial justice who found the presence of gas lines and a sharp slope on the neighboring, subdivided parcel made passage over the parcel unfeasible. This was contradictory to the presentation to the local planning board, at the time of the subdivision. An easement by necessity should not be determined simply "to avoid inconvenience and expense" Id. at 426.
Again, Mr. Keough's proof falls woefully short. He presented no expert opinion on the condition of either lot, (his parcel, or the subdivided parcel on the main road) leaving the court to speculate whether a new driveway would be feasible. While lay witnesses claimed that the lot fronting the road `seemed wet', this does not assist the court. Some of the land may not have been a significant wetland. Alternate methods of constructing an access over this lot were never studied or introduced at trial. Finally, Mr. Keough tendered no evidence of the condition of the property or the plans to develop it at the time of the subdivision. As the lots were subdivided in 1984, the planning board likely considered the issue of access to the landlocked parcels.
The court views the property at the time the severance or subdivision is made because an easement by necessity is predicated on the theory that one who "conveys property . . . intends to include in the conveyance whatever is necessary for the use and the enjoyment of the land retained." Bovi v. Murray, 601 A.2d 960, 962
(R.I. 1992), citations deleted. Hence "If there is nounity of ownership, there can be no implied easement.
Indeed the unity requirement prevents a finding of an easement by necessity in the land of a third person who is a stranger to the claimant's title." Id, citations deleted, emphasis added.[16]
This court is unable to find evidence of necessity or evidence that Sachems's parcel was ever a part of Mr. Keough's lot. While the court recognizes that Mr. Keough's lot has no frontage on the main road, the court has no evidence as to whether access through assessor's lot 95-1 is feasible.[17] Mr. Keough has not met his burden of establishing an easement by necessity.
Easement by estoppel or easement in pais
In a proposed amended complaint submitted at trial, Mr. Keough seeks to add another count, claiming an "easement by estoppel" or an "easement in pais". As the motion to amend was made at the second day of trial, well after Sachem rested its case, an amendment appears somewhat prejudicial. The court grants the tardy motion to amend most reluctantly, giving deference to the liberal standard for amendments allowed by R.C.P. 15. However, by so doing this court does not conclude that the new count is a cognizable action.
Mr. Keough cites no Rhode Island case where an easement was established or implied by the court, because of the equity of the situation, he only reference cases regarding the general principles of equity.
Rhode Island law on property rights and easements is time-honored and clear. The Rhode Island General Assembly, through its passage of R.I.G.L. § 34-7-1 has set the requirements for prescriptive acquisition of property rights. While this court has equity jurisdiction "when the remedy at law is adequate, equity does not need to interpose." First National Bank v. Randall,20 R.I. 319, 38 A. 1055, 20 R.I. 319, (R.I. 1897). It is not the function of this court to find a quirk in the law and extend it beyond all reasonable limitations.
In support of its equitable claim, Mr. Keough quoted a portion of El Marocco Club, Inc. v. Richardson,746 A.2d 1228, 1233 (R.I., 2000). As he failed to include a "key element" a more complete quotation is:
 For equitable estoppel, or estoppel in pais, to apply, the following elements must be established: "first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury." Providence Teachers Union v. Providence School Board, 689 A.2d 388, 391-92 (R.I. 1997) (quoting Lichtenstein v. Parness, 81 R.I. 135, 138, 99 A.2d 3, 5 (1953)).
 Moreover, "[t]he key element of an estoppel is intentionally induced prejudicial reliance." East Greenwich Yacht Club v. Coastal Resources Management Council, 118 R.I. 559, 568, 376 A.2d 682, 686 (1977) (citing Raymond v. B.I.F. Industries, Inc., 112 R.I. 192, 198-99, 308 A.2d 820, 823 (1973)).
 El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1234 (R.I., 2000)
Neither Sachem nor its predecessors in title intentionally induced Mr. Keough to rely on their representations. If there was any affirmative representation, it was on the part of Randall Associates allowing prior owners to use the driveway temporarily. This is far different from inducing Mr. Keough to rely on any representations.
Finally, the Rhode Island Supreme Court has had opportunities to adopt the easement by estoppel theory, and has failed to do so. Henry v.Dalton, 89 R.I. 150, 151 A.2d 362, 366 (R.I., 1959) was initiated by a bill in equity to establish an easement in a strip of land. The permissive use was never confirmed in writing though there was a clear oral agreement with a prior owner. The Henry court held that although the Henrys had relied on the permissive use, it was revocable by the new owner. There were no equitable rights established. There the Henrys were required to remove a wall built on the property of the defendant pursuant to a license. The court declared:
 It is far better, we think, that the law requiring interests in land to be evidenced by deed, should be observed, than to leave it to the chancellor to construe an executed license as a grant, depending upon what, in his view, may be equity in the special case. Henry v. Dalton, 89 R.I., 150, 151 A.2d 362, 366 (R.I., 1959), citing Crosdale v. Lanigan, 129 N.Y. 604, 825, 29 N.E. 824, 610.
As the permission is revocable at will, no easement by estoppel or easement in pais is recognized.[18]
Trespass
Contesting Mr. Keough's use of the driveway, Sachem contends he is committing a trespass. A trespass occurs when a person "intentionally and without consent or privilege enters onto another's property" Ferreira v.Strack, 652 A.2d 965, 969 (R.I., 1995). Sachem seeks an injunction and damages. Since Sachem's ownership of its property (if not before), Mr. Keough has had no consent to use the driveway. Any license was clearly revoked by Sachem's protestations to all who it discovered on the property, followed by the institution of this action
Though Mr. Keough admits to having crossed the driveway and cleared brush along the driveway, his actions constitute a trespass. Sachem has not established any amount for damages, even though statutes expressly prohibit the clearing or taking of brush. R.I.G.L. § 34-20-1. Therefore, the court awards nominal damages of $1.00 against Mr. Keough for his use of the driveway and clearing the brush. The court grants Sachem's request that the trespass cease and permanently enjoins Mr. Keough, his agents and employees from using the driveway, clearing brush or any growth on Sachem's property or entering upon Sachem's property without Sachem's express consent.
The court has also found that Mr. Keough's septic system was placed on Sachem's property without Sachem's consent. The uncontroverted testimony of Mr. Grant, a licensed surveyor, clearly established that some pipes lie on Sachem's side of the border. At no time did Sachem, or any other owner, allow a septic system to be built on its property. The system was put in during Mr. Keough's ownership and constitutes a continuing trespass on Sachem's property. Accordingly, an injunction shall issue mandating that Mr. Keough employ a contractor, duly licensed to repair ISDS systems by the R.I. Department of Environmental Management, to remove the septic system within forty (40) days of the date of this Decision. Should Mr. Keough fail to do so, or should Sachem refuse to allow such contractor to enter onto its property, either party may return to this court for further relief, to determine how the septic system shall be removed.
Coastal Violation
Sachem's third count apparently sounds in indemnification. Sachem claims that the work done on Mr. Keough's septic system caused Sachem to incur penalties for coastal violations from the Rhode Island Coastal Resources Management Council. Although exhibit 12 references a $1000 fine, it appears that the fine was assessed against Mr. Keough, not Sachem. More significantly, Sachem never established that it paid the fine or incurred any other costs. Accordingly, judgment shall enter in favor of Mr. Keough on this count. This ruling should not be construed so as to limit the jurisdiction of the Coastal Resources Management Council, which is not a party to this action.
Punitive damages
Punitive damages are awarded
 only in the rare circumstances when "a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages." Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993) (citing Davet v. Maccarone, 973 F.2d 22, 27 (1st Cir. 1992)). A party seeking punitive damages must produce "`evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality' that should be punished." Bourque v. Stop Shop Companies, Inc., 814 A.2d 320, 326 (R.I. 2003) (per curiam) (quoting Mark v. Congregation Mishkon Tefiloh, 745 A.2d 777, 779 (R.I. 2000)).
 Fenwick v. Oberman, 847 A.2d 852, 855 (R.I. 2004).
While Mr. Keough's conduct is questionable, there was insufficient evidence of willfulness, recklessness or wickedness here so as to justify an award of punitive damages against Mr. Keough.
CONCLUSION
Mr. Keough's motion to amend the counterclaim, made on May 26, 2005, is granted.
A declaratory judgment shall issue in favor of Sachem establishing that Sachem owns the right, title and interest to the driveway on its property, and Mr. Keough has no possessory interest in the driveway or any right to pass, repass, or use the driveway on Sachem's land. No easement exists over the driveway in favor of Mr. Keough or owners of the Keough lot. Specifically, Mr. Keough has no ownership interest or right to pass along any property to the west of the line drawn on the "Survey Plan Prepared for Sachem Passage Association" as amended on November 30, 2001 drawn by Environmental Planning Surveying, Inc, which is Exhibit 1. "The line" as stated in the previous sentence shall refer to the line demarking the boundary between the parties properties as shown on said exhibit 1 which includes the term "REBAR (SET)" at eight locations along the line.
A permanent injunction shall issue permanently enjoining Mr. Keough, his agents and employees from using the driveway, clearing brush or any growth on Sachem's property or entering upon Sachem's property without Sachem's express consent.
An injunction shall issue mandating that Mr. Keough employ a contractor, duly licensed to repair ISDS systems by the R.I. Department of Environmental Management, to remove the portion of the septic system on Sachem's property within forty (40) days of the date of this Decision. This system shall be removed in conformity with state law, including ISDS rules and regulation. Should Mr. Keough fail to do so, or should Sachem refuse to have such contractor enter onto its property, either party may return to this court for further relief, to determine how the septic system shall be removed.
Sachem is awarded nominal damages of $1.00 and court costs. No punitive damages are awarded.
Judgment is awarded to the plaintiff on Counts 1 and 2 of the Complaint. Judgment is awarded to the defendant on Count 3 of the Complaint. Judgment is awarded to the plaintiff on defendant's counterclaim.
[1] Claims against Mr. Frisella were severed for trial.
[2] Specifically the lot was conveyed from Douglas S. Romano to Francis G. Keough, III via a warranty deed dated November 9, 1999 and recorded in Charlestown Land Evidence Records on November 17, 1999 in book 184, page 155. The deed does not explicitly convey the right of way, though it references it as a boundary. (Exhibit 9).
[3] Real estate conveyance stamps are affixed to the warranty deeds. As they are generated by payment of a state tax on the seller of the property based on the amount of the consideration, RIGL § 44-25-1, the stamps infer that substantial consideration was paid for several of the transfers.
[4] Mr. Keough's failure to retain records for recent construction of the house was never explained. He produced no original sales agreement, no option agreement, payments for the option or purchase, no permits, no permit applications, no building plans, no septic system plan, no receipts for building materials, no lot design, no Coastal Resources Management Council permit, no building contracts and no other construction documents. This diminished his credibility.
[5] The Narragansett Indian Tribe is a federally recognized Indian tribe located in Rhode Island. See Final Determination for Acknowledgment of Narragansett Indian Tribe of Rhode Island, 48 Fed. Reg. 6177 (Feb. 10, 1983). The Narragansetts were habitants of what is now Rhode Island, prior to the settlement of Rhode Island. See Carcieri v. Norton, 398 F3d. 225, 2005 U.S. App. Lexis 2046, (C.A. 1, February 9, 2005).
[6] Other findings of fact are included in the following analysis.
[7] Sachem contests whether the entire five year period should be counted claiming it had protested before instituting litigation.
[8] The ability of the Narragansett Indians to use the property is not the subject of this litigation.
[9] While Mr. Keough claims the building inspector informed him that he could use the driveway, he offers no documentation. Mr. Keough did not submit the testimony of the building inspector or explain his absence. Certainly, Mr. Keough's testimony on this issue was neither credible nor convincing.
[10] If Randall allowed use of the drive to Mr. Iallemo, that use would be permissive, rather than hostile. Sachem claimed that Mr. Keough was unsuccessful in attempting to purchase the property from Randall. The Court was kept in the dark concerning Randall's involvement.
[11] During cross-examination, Mr. Keough was asked about the building inspector's approval. Mr. Keough claimed he referred the building inspector to Mr. Randall regarding his permission to use the driveway Somehow, Mr. Keough thought the issue had been resolved. This testimony was inconsistent with his prior testimony and with his deposition testimony. Mr. Keough, who had claimed that Mr. Iellamo had permission to use the driveway, then lost his recollection of this topic. This left the court to question all of Mr. Keough's testimony.
[12] In Reitsma the state constructed and maintained a ramp for decades, constituting a "permanent, physical structure" obvious to the owners of legal title. p. 834. Additionally, "witnesses testified to years of unfettered access" to the pond. p. 836.
[13] Other distinctions from the Reitsma case are clear from these quotations:
 In this instance the claims made that the public easement exists not by grant but by public use for the prescriptive period. In our opinion the evidence of such user is meager to say the least. Aside from evidence of long-continued use by footpaths over the strip to get from the road to the shore, which incidentally by reason of G.L. 1938 Chap. 435, section 5, cannot establish an easement, there is no substantial evidence that the strip was created as a public way adverse to the claims of the owners of the title. This Court has held that "to create a public way by use the proof must show that the use has been general, uninterrupted, continuous and adverse so as to warrant the inference that it had been laid out, appropriated or dedicated by the proprietors of the adjoining land of the public." Jones on Easements, § 461; Elliott on Roads and Streets, 3 (Ed), Vol. 1 § 194 `an occasional use by a few persons living in the neighborhood without any assertion of a public right is not sufficient. Eddy v. Clark, 38 R.I. 371, 379, 1995 A. 851, 854.
 *****
 Given the factual findings that the trial justice in the above-referenced law, we are constrained to conclude that the state's 1965 construction of the boat ramp (a substantial portion of which was located upon and in the lake bed) and its subsequent maintenance of this structure during its uninterrupted use by the public over the next thirty-two years was open, actual, notorious, hostile, adverse, continuous and — given the state's objective acts of ownership in the public's highly visible use of the ramp to obtain access to the lake — accomplished under a claim of right as a matter of law . . . as such the state's thirty-two year maintenance of its portion of the boat ramp upon the lake bed amounts to a classic case of adverse possession. Reitsma v. Pascoag Reservoir Dam, LLC., 774 A.2d. 826, 833-4 (R.I. 2001). Citations omitted.
[14] While Mr. Flynn testified to a varied use over many years, the Court did not find the testimony of Mr. Flynn to be credible. Not only did he excavate for the septic system described herein, but his testimony was contradicted by others.
[15] Query why Mr. Keough never exercised the written option if he was already in litigation with Mr. Iellamo.
[16] To establish an easement by necessity a plaintiff may need to establish that an easement was intended, but left out of the deed. Kusiak v. Ucci, 53 R.I. 36,163 A. 226, 227 (R.I., 1932). Mowry v. Wright, R.I. Superior, 1997 WL 839880, J. Williams, p. 5, W.C. No. 93-273, January 16, 1997. Mr. Keough did not make this showing.
[17] Mr. Keough attempts to infer that the easement by necessity would lie on Sachem's driveway. While he did not describe the likelihood of access over lot 95-1, he also failed to discuss whether access is feasible through lot 97 or property along the eastern border of Mr. Keough's lot.
[18] "Equity does not grant relief to a party on the ground of accident or mistake, if the accident or mistake has arisen from his own gross negligence, or want of reasonable care, and especially if relief to him will harm another." Upham v. Hamill, 11 R.I. 565, 23 Am. Rep. 525. Torek v. Butler, 147 A. 872, 873, 50 R.I. 347, (R.I. 1929).